```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

**COUNTRYWIDE HOME LOANS, INC.**                  **CIVIL ACTION**

**VERSUS**                                        **NO: 07-3353**

**MARTHA JOHNSON ANDERSON, ET AL**                **SECTION: B(2)**

<u>**ORDER AND REASONS**</u>

Before the Court is Plaintiff's, BAC Home Loans Servicing formerly known as Countrywide Home Loans, Inc. d/b/a America's Wholesale Lender ("BAC"), Motion for Summary Judgment (Rec. Doc. No. 38). Defendants, Martha Johnson Anderson, Antoinette M. Anderson, Frederick C. Anderson Jr., and Derrick Anderson ("the Andersons"), oppose this motion (Rec. Doc. No. 40). Plaintiff's reply memorandum (Rec. Doc. No. 43).

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Rec. Doc. No. 38) is hereby **GRANTED.**

The present action began as an executory proceeding filed by BAC on January 31, 2007 in state court, seeking to enforce a note and mortgage on the Andersons' home. According to BAC, the Andersons defaulted on the note and mortgage agreement after they failed to make payment installments due March 1, 2006. Rec. Doc. No. 38-1, at 1. On September 12, 2006, BAC sent a notice to the Andersons advising them that the loan was in default, setting forth the total amount needed to bring the loan current, and advising that the entire principal balance of the loan plus late charges

would become immediately due and payable ("Acceleration") unless the default was cured in 30 days, and that foreclosure proceedings would commence if such amounts were not timely paid. Rec. Doc. No. 38-1, at 3.

Defendants claim BAC made a "Special Forbearance Agreement" with Ms. Anderson and assured her verbally that a payment plan would be worked out. Rec. Doc. No. 40, at 2. Defendants further assert that BAC sent them a notice on April 6, 2006, which acknowledged receipt of a $550.00 payment and confirmed the existence of its "Special Forbearance Agreement dated April 3, 2006." Rec. Doc. No. 40, at 2-3. Defendants also allege, however, that BAC failed to send them a copy of the forbearance agreement or state the amount of payments required thereunder. (See affidavit of Martha Anderson, Rec. Doc. 40-1 at 2-3). After July 6, 2006, BAC refused to accept any further payments.

Defendants filed a counterclaim, contending that BAC's refusal to accept payments tendered and suppression of the truth regarding their forbearance agreement and intentional filing of foreclosure suit with knowledge of same constitutes breach of contract, negligence, constructive fraud, unjust enrichment, and violations of Louisiana's Unfair Trade Practices Act and the Fair Debt Collection Practices Act. BAC previously moved for summary judgment (Rec. Doc. No. 9), which this Court denied (Rec. Doc. No. 31), finding that genuine issues of material fact existed regarding

whether the parties had entered into a forbearance agreement and whether defendants were in default on the subject loan.

After additional discovery, BAC again moves for summary judgment seeking dismissal of the counterclaims. BAC now argues that the Louisiana Credit Agreement Statute, La. R.S. 6:1121 *et seq.* ("LCAS"), precludes Defendants' claims for damages under any theory of recovery. Specifically, BAC contends that the LCAS requires any alleged credit agreement, including an agreement by a creditor to forbear from exercising remedies under a prior credit agreement, to be in writing, contain express consideration, set forth the relevant terms and conditions, and be signed by the creditor and debtor in order to be enforceable. Rec. Doc. No. 38-1, at 9. BAC claims that Defendants have not produced any forbearance agreement that meets the statutory requirements because such agreement does not exist. Rec. Doc. No. 38-1, at 10.

Defendants contend that BAC's argument that the LCAS precludes their counterclaims must fail because their counterclaims do not constitute "an action on a credit agreement," as they are seeking damages for fraud and/or intentional refusal to accept loan payments, as opposed to enforcement of the agreement. Rec. Doc. No. 40, at 3. Additionally, Defendants have not admitted that they defaulted on the note, but rather assert that they complied with its terms and in fact offered payment which BAC refused. Id. Finally, Defendants claim that a written forbearance agreement was

3

in existence and referenced to by name and date in a letter from BAC to the Defendants. Rec. Doc. No. 40, at 3-4. Defendants allege that BAC failed to produce the document in response to their specific interrogatory and request. Rec. Doc. No. 40, at 4. Defendants also allege that the Fifth Circuit permits an adverse inference against the destroyer of evidence upon a showing of bad faith or bad conduct. Rec. Doc. No. 40, at 6. Accordingly, Defendants insist that whether a written forbearance agreement exists and whether Defendants are entitled to an evidentiary presumption adverse to BAC due to its failure to produce the agreement are genuine issues of material fact sufficient to preclude summary judgment.

**A.    Summary Judgment Standard**

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate

that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas,* 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id.* Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.* 7 F.3d 1203, 1207 (5th Cir. 1993).

**B. Enforceability of the Alleged Forbearance Agreement**

Defendants' counterclaims rely on the existence of a valid and enforceable forbearance agreement. According to the LCAS:

> A debtor shall not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor.

La. R.S. 6:1122. La. R.S. 6:1121 defines a "credit agreement" as "an agreement to lend or forbear repayment of money or goods or to otherwise extend credit, or make any other financial accommodation." A "creditor" is defined as a financial institution or any other type of creditor that extends credit or extend a financial accommodation under a credit agreement with a debtor." La. R.S. 6:1121. A "financial institution" is defined as "a bank, savings and loan association, savings bank, or credit union authorized to transact business in this state." La. R.S. 1121. Additionally, La. R.S. 6:1123 provides:

5

> A. The following actions shall not give rise to a claim that a new credit agreement is created, unless the agreement satisfies the requirements of R.S. 6:1122:
>
> (3) The agreement of a creditor to take or not to take certain actions, such as entering into a new credit agreement, forbearing from exercising remedies under a prior credit agreement, or extending installments due under a prior credit agreement.

These provisions clearly apply to BAC as a "financial institution" and "creditor," as well as the note, mortgage, and alleged forbearance agreement as "credit agreements."

Moreover, the LCAS has been interpreted by the Louisiana Supreme Court to preclude all actions for damages arising from oral credit agreements, regardless of the legal theory asserted. *Jesco Const. Corp. v. NationsBank Corp.*, 830 So.2d 989, 2002-0057 (La. 10/25/02); *Whitney National Bank v. Rockwell*, 661 So.2d 1325, 94-3049 (La. 10/16/95).

In *Whitney*, the Bank filed an action on a promissory note for the full amount of principal and interest. *Id.* at 1326. The borrower asserted a reconventional demand for damages, claiming the lender breached its verbal agreement to accept interest-only payments for a specified period of time. *Id.* Although limited to damages for an alleged breach of contract, the Louisiana Supreme Court held that the Bank was entitled to summary judgment, as the alleged agreement could not be enforced in a reconventional demand for damages since it was not in writing as required by the LCAS. *Id.* at 1332-33.

6

Subsequently, in *Jesco*, the Louisiana Supreme Court was confronted with the certified question from the United States Fifth Circuit Court of Appeals of whether the LCAS "precludes all actions for damages arising from oral credit agreements, regardless of the legal theory of recovery." 830 So.2d 989, 990. The Court answered in the affirmative, finding that since all of the plaintiff's causes of action, including breach of contract, detrimental reliance, negligent misrepresentation, unfair trade practices, breach of the duty of good faith and fair dealing, and promissory and equitable estoppel, were based upon an alleged oral credit agreement, all were barred by La. R.S. 6:1122. *Id.* at 992. In accordance with this ruling, the Fifth Circuit found that the defendants were entitled to summary judgment on all of plaintiff's claims. *Jesco Const. Corp. v. NationsBank Corp.*, 321 F.3d 501, 502-03 (5th Cir. 2003).

BAC maintains that although negotiations took place between the parties to avoid foreclosure, the parties never signed any agreement that amended the terms and provisions of the note and mortgage, and therefore no enforceable forbearance agreement, as mandated by the LCAS, existed upon which Defendants' counterclaims can be based. Rec. Doc. No. 38-1, at 9-10.

Defendants first respond that their claims do not constitute "an action on a credit agreement" because they do not seek to enforce the alleged forbearance agreement, but instead seek

7

damages arising from BAC's intentional refusal to accept mortgage payments tendered.  Rec. Doc. No. 40, at 3.  However, Defendants' contention is illogical, as BAC's refusal to accept payments tendered after July 6, 2006 could only give rise to Defendants' counterclaims if an agreement altering the terms and provisions of the note and mortgage - the alleged forbearance agreement - was in place with which BAC's actions failed to comply.

Accordingly, for Defendants' claims to be actionable, the alleged forbearance agreement must meet the requirements of the LCAS.  Defendants focus on a notice sent by BAC purporting to confirm the existence of the parties' "Special Forbearance Agreement dated April 3, 2006" as evidence that a written forbearance agreement does, or did, indeed exist.  Rec. Doc. No. 40, at 2-4.  Defendants claim that BAC has failed to produce the agreement and assert that as a result, Defendants may be entitled to an evidentiary presumption against BAC as the destroyer of evidence in "bad faith" or "bad conduct."  Rec. Doc. No. 40, at 4, 6.  However, Defendants have put forth no evidence that BAC destroyed or concealed such evidence in "bad faith" or "bad conduct" in order to support their allegation.

Moreover, although the parties may dispute whether the alleged forbearance agreement was in writing, the LCAS additionally mandates that for a credit agreement to be the basis for any action, it must be signed by the creditor and the debtor.

8

La. R.S. 6:1122. BAC's assistant vice president attested that all negotiations regarding forbearance were verbal and no forbearance agreement was signed by the parties. Rec. Doc. No. 38-4, at 3. Defendants have not alleged, nor presented any evidence, that they did in fact sign the alleged forbearance agreement. To the contrary, Ms. Anderson's affidavit makes clear that the only writing she encountered concerning the alleged agreement was the notice sent by BAC that made reference to it, as she asserts that she was never provided with a copy of the alleged agreement nor made aware of its terms for payment. Rec. Doc. No. 40-1, at 2-3.

Defendants' opposition memorandum cites to *EPCO Carbon Dioxide Products, Inc. v. JP Morgan Chase Bank*, 467 F.3d 466 (5th Cir. 2006), as support for their claim that BAC's reference to a "Special Forbearance Agreement dated April 3, 2006" and Ms. Anderson's payments sent and accepted thereafter are sufficient to show written offer and acceptance and therefore satisfy the LCAS requirement of a written agreement. Rec. Doc. No. 40, at 5-6. Defendants' reliance on *EPCO*, however, is misplaced. In *EPCO*, the Bank sought a 12(b)(6) motion to dismiss EPCO's claims because they arose out of an alleged breach of a credit agreement and EPCO failed to allege that the agreement was in writing and signed by both parties in accordance with the LCAS. *EPCO*, 467 F.3d 466, at 468-69. Instead, EPCO merely pleaded that it was

9

extended a written offer by the Bank which it accepted. *Id.* at 470.

The Fifth Circuit found that dismissal was improper at such an early stage, because EPCO had not conceded that its claims were based on an oral representation or an unsigned agreement. *Id.* at 471. Specifically, EPCO could still show that its acceptance was in a form sufficient to satisfy the LCAS - "either by submitting proof that its agreement with Chase was in a written, signed document or proof that it submitted its acceptance of Chase's offer electronically and that the two parties had agreed to conduct business electronically." *Id.*

Here, Defendants never allege that a forbearance agreement with BAC was made in a signed document, and there is no issue of electronic business taking place. As Defendants have failed to make any showing that a written agreement *signed by both parties* exists, there is no genuine issue of material fact in this matter. All of Defendants' claims are based on an alleged forbearance agreement that does not meet the requirements of the LCAS and are therefore not actionable.

The key here is that the "oral agreement" is unenforceable and alternatively, the September 2006 notice effectively notifies debtors of default, the amount needed to cure same, and the time period for doing so - whatever alleged agreement the parties had

in April 2006 is effectively nullified by fact and law with the September 2006 notice.

Accordingly, **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Rec. Doc. No. 38) is hereby **GRANTED**.

New Orleans, Louisiana this 20th day of September, 2010.

_____
United States District Judge